ORIGINAL

..ONICALLY F:

..ED:    3/24/26

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LEDGEROCK ADVISORS, LLC, a Connecticut
limited liability company,

                              Plaintiff,

        v.

PAC PROGRAM, LLC, a Florida limited
liability company; THE PAC PROGRAM
HOLDING COMPANY, INC., a New York
corporation; and DOES 1 through 20,
inclusive,

                              Defendants.

25 Civ. 4075 (LLS)

OPINION & ORDER

        Defendants PAC Program, LLC ("PAC") and The PAC Program

Holding Company, Inc. ("PPHC") move to vacate the clerk's

certificates of default entered against them pursuant to Federal

Rule of Civil Procedure 55(c) and for permission to respond to

the complaint. For the reasons stated below, defendants' motion

is granted and plaintiff's request for related attorneys' fees

is denied.

                          **BACKGROUND**

    This is a breach of contract action brought by plaintiff

LedgeRock Advisors, LLC ("LRA") against PAC, PPHC, and unnamed

defendants who plaintiff alleges facilitated the acts complained

of. See generally Compl. (Dkt. No. 1). LRA provides management

consulting services. Id. at ¶ 8. PAC, as the successor entity to

PPHC, owns and operates four behavioral health clinics in New

-1-

York City. Id. at ¶¶ 2-3.

On July 1, 2022, LRA executed a written Engagement Agreement with PAC to assist the company in certain transactions for a two-year term (the "Contract"). Id. at ¶¶ 10-11. Specifically, the Contract committed LRA to "[i]dentifying funding sources and structuring capital investments acquisitions and partnerships" and "[a]ssisting in the sale of the Company and any of its subsidiaries or affiliates." Id. at ¶ 12. In return, PAC was to pay LRA a monthly retainer fee of $175,000 for the life of the Contract and a "success fee" upon "the closing of any Transaction" as defined in the Contract. Id. However, according to plaintiff, PAC cut LRA out of its negotiations with PAC's eventual buyer in order to avoid paying the success fee and improperly terminated the Contract before payment of all monthly retainer fees. Id. at ¶¶ 23-24, 39.

LRA therefore initiated this action to recover the success fee and the remaining retainer fees on May 14, 2025. See id. Plaintiff served PPHC via its registered agent, the New York Secretary of State (Affirm. Service (Dkt. No. 14)), and this Court authorized service by publication as to PAC upon a representation that plaintiff had "exercised reasonable diligence in locating" it. Mot. Service Pub. at 2 (Dkt. No. 19); Order re Service Pub. (Dkt. No. 23). After the requisite time to respond to service had passed for both defendants, plaintiff

-2-

obtained a clerk's certificate of default as to each on October 30 and 31, 2025, respectively (Dkt. Nos. 29; 34).

Only then, on November 3, 2025, did plaintiff's counsel email defense counsel to inform them of the suit and certificates of default, despite having been informed in March 2023 that defendants had retained counsel in relation to this matter. Rosenberg Decl. ¶¶ 4-5, Ex. A. (Dkt. No. 40). Defense counsel entered an appearance three days after he alleges to have received plaintiff's letter and began the process of moving to vacate the default on November 21, 2025. See id. ¶ 5; Not. Appearance (Dkt. No. 35); Letter Mot. (Dkt. No. 36).

## DISCUSSION

### I. Reply Declaration

As a preliminary matter, the Court addresses plaintiff's argument that the declaration and exhibits submitted with defendants' reply brief should not be considered. See Obj. Reply Decl. (Dkt. No. 47). Defendants' reply declaration includes two categories of new information: 1) a copy of the Certificate of Merger filed with the New York Secretary of State, which reflects the same service address on the record in Florida, and 2) arguments as to why plaintiff should not be awarded fees and costs in connection with attempting service, obtaining the certificates of default, and opposing vacatur. See generally Rosenberg Reply Decl. (Dkt. No. 45).

Plaintiff cites Dixon v. NBCUniversal Media, LLC for the proposition that "[i]t is plainly improper to submit on reply evidentiary information that was available to the moving party at the time that it filed its motion and that is necessary in order for that party to meet its burden" (Opp. Mot. Vacate at 6; Obj. Reply Decl. at 2), but conspicuously omits the second half of Dixon's assertion that nevertheless, "a court may choose to admit such evidence where the opposing party will suffer no prejudice," as well as its mandate that courts have "broad discretion" on the issue. 947 F. Supp. 2d 390, 396 (S.D.N.Y. 2013). Consequently, plaintiff propounds no evidence that it would suffer prejudice if the Court considered the reply declaration. Regardless, the Court need not determine whether plaintiff would be prejudiced by consideration of defendants' newly proffered Certificate of Merger, because it finds that the Rule 55(c) analysis favors vacatur even without it.

As for defendants' reply declaration arguments regarding attorneys' fees, "[a] court generally will consider arguments raised for the first time in reply if they are responses to the other party's opposition." Williams v. New York City Dep't of Educ., 2021 WL 1178118, at *4 (S.D.N.Y. Mar. 29, 2021). Plaintiff first argued for an award of attorneys' fees and costs in its opposition, meaning defendants' first opportunity to respond was their reply. Moreover, the central facts supporting

-4-

defendants' arguments for denial of fees were stated in their initial motion. See Mem. Mot. Vacate at 4 (Dkt. No. 41); see also Ross Aff. ¶ 15-19; Rosenberg Aff. ¶ 2-10. Thus, the Court will consider defendants' arguments regarding attorneys' fees.

## II.  Rule 55(c) Analysis

Defendants move to vacate the clerk's certificates of default entered against them pursuant to Federal Rule of Civil Procedure 55(c) and for leave to file an answer to the complaint. See Mem. Mot. Vacate. Rule 55(c) dictates that "[t]he court may set aside an entry of default for good cause." To determine whether good cause exists, courts in this Circuit balance three factors: "(1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented." Henry v. Oluwole, 108 F.4th 45, 52 (2d Cir. 2024) (citation omitted). The Court analyzes these factors "in light of the Second Circuit's oft-stated preference for resolving disputes on the merits." Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95 (2d Cir. 1993).

### a. Willfulness

Willfulness refers to conduct that is more than "negligence or even gross negligence." S.E.C. v. McNulty, 137 F.3d 732, 738 (2d Cir. 1998). "On the other hand, the court may find a default to have been willful where the conduct of counsel or the litigant was egregious and was not satisfactorily explained."

Id. PPHC alleges it never received service due to its merger with PAC. Mem. Mot. Vacate at 3. Plaintiff argues this explanation is not satisfactory, because PPHC was required to designate an address for service post-merger. Opp. Mot. Vacate at 5-6. Meanwhile, PAC alleges its inability to be served was due to an unintentional delay in updating its address with the Florida Department of State. Mem. Mot. Vacate at 3.

Defendants' explanations are not airtight, but their failures amount only to negligence, which they admit. See Reply Mem. Mot. Vacate at 2 (Dkt. No. 46). In the absence of evidence that defendants' actions were intentional, the failure to update service addresses does not constitute egregious or deliberate conduct indictive of willfulness. See Am. All. Ins. Co. v. Eagle Ins. Co., 92 F.3d 57, 60 (2d Cir. 1996) (comparing cases of "administrative or clerical error," in which the court will permit vacatur, to "egregious or deliberate" conduct, such as a strategic decision to default, that warrants denial of vacatur). Moreover, defendants' efforts to contest the defaults within two weeks of learning about them is a key indicator that the default was not willful. See Wandel v. Gao, 2022 WL 61867, at *4 (S.D.N.Y. Jan. 6, 2022) ("[Defendant's] prompt motion to set aside the default — filed less than two weeks after its entry — strongly suggests he did not default willfully."). Therefore, this factor weighs in favor of vacatur.

### b. Prejudice

"Because relief from a default entry...essentially is a matter of fairness and judicial discretion, the single most persuasive reason for denying a Rule 55(c) motion is prejudice to the nondefaulting party caused by reopening the action." Select Harvest USA LLC v. Indian Overseas Bank, 2023 WL 2664079, at *12 (S.D.N.Y. Mar. 28, 2023) (citation omitted). Plaintiff makes no argument that it would be prejudiced by granting vacatur and reopening this case. Indeed, LRA will not be prevented from recovering any debt owed; it will instead have the preferable opportunity of litigating its case on the merits. Therefore, this factor strongly counsels in favor of vacatur.

### c. Meritorious Defense

"In order to make a sufficient showing of a meritorious defense in connection with a motion to vacate a default judgment, the defendant need not establish his defense conclusively, but he must present evidence of facts that, if proven at trial, would constitute a complete defense." McNulty, 137 F.3d at 740 (internal quotation marks and citations omitted). This threshold is low, but defenses must be more than "mere conclusory denials of the allegations." Wandel, 2022 WL 61867, at *5.

Regarding plaintiff's breach of contract claim, defendants assert the defense that plaintiff is not entitled to a success

-7-

fee under the terms of the Contract and is not entitled to any remaining retainer fees because the parties agreed to a termination of the Contract in February 2023. Mem. Mot. Vacate at 6. Regarding plaintiff's claim that they breached the covenant of good faith and fair dealing, defendants argue that the claim is barred by case law as redundant of the contract claim. Id. at 7. Those statements meet the low threshold, as they are more than mere denials of the allegations and, if proven at trial, could prevent plaintiff from recovery. Thus, this factor too counsels in favor of vacatur.

Finding all factors favor vacatur, the Court vacates the clerk's certificates of default as to both PAC and PPHC.

### III.    Costs and Fees

Finally, plaintiff requests an award of costs and fees associated with service, default, and the motion for vacatur to compensate it for the additional costs "[p]laintiff has been forced to expend." Opp. Mot. Vacate at 7. An award of attorneys' fees and costs as a condition of vacatur is within the district court's discretion to "avoid undue prejudice on the opposing party." Powerserve Int'l, Inc. v. Lavi, 239 F.3d 508, 515 (2d Cir. 2001).

There is no evidence that plaintiff will suffer undue prejudice as a result of vacatur that would merit an award of fees. On the contrary, plaintiff appears to have tried to game

-8-

the default system to obtain an advantage. Plaintiff does not dispute that it had defendants' president's and defense counsel's contact information during the entire service process but only contacted defendants' counsel after obtaining certificates of default. See Opp. Mot. Vacate. Nor does plaintiff provide any reason it believed using that contact information would be unavailing for service but not for notice of default. See id. The only plausible explanation is that plaintiff took on the additional expense of service by publication and the ensuing motions in order to increase its likelihood of obtaining defaults. The Court will not encourage such behavior by having defendants subsidize it. Plaintiff's request is denied.

## CONCLUSION

For the foregoing reasons, defendants' motion to vacate is granted. Defendants may answer the complaint. Plaintiff's request for fees and costs is denied.

Dated:    New York, New York
          March 24 2026

_____
LOUIS L. STANTON
U.S.D.J.

-9-